UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF PEN REGISTERS AND TRAP AND TRACE DEVICES | Case No. 5:23-MJ-5106<br><br>**FILED UNDER SEAL** |

## APPLICATION

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of a pen register and a trap and trace device ("pen/trap device") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to and from the Instagram account(s) listed in Attachment A. In support of this application, the United States asserts:

1. This is an application, made under 18 U.S.C. § 3122(a)(1), for an Order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and a trap and trace device.

2. Such an application must include three elements: (1) "the identity of the attorney for the Government or the State law enforcement or investigative officer making the application"; (2) "the identity of the law enforcement agency conducting the investigation"; and (3) "a certification by the applicant that the information likely to be

obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b).

3. The undersigned applicant is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

4. The law enforcement agency conducting the investigation is the Federal Bureau of Investigation (FBI).

5. The applicant hereby certifies that the information likely to be obtained by the requested pen/trap device is relevant to an ongoing criminal investigation being conducted by the FBI of possible violations of crimes including 18 U.S.C. § 2332b, acts of terrorism transcending national boundaries and § 2339A, providing material support to terrorism, by the user of Instagram account associated with **vanity name "ziarmalsharify" or account ID number 45800988141**.

6. This Court has jurisdiction to issue the requested order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(1). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

ADDITIONAL INFORMATION

7. Other than the three elements described above, federal law does not require that an application for an order authorizing the installation and use of a pen register and a trap and trace device specify any facts. The following additional information is provided to demonstrate that the order requested falls within this Court's authority to authorize the

installation and use of a pen register or trap and trace device under 18 U.S.C. § 3123(a)(1).

8. A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

9. In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to communications sent over the Internet, as described below.

10. Instagram is a service owned by Meta Platforms, Inc. ("Meta"), a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.[1]

---

1 The information in this section is based on information published by Meta on its Instagram website, including, but not limited to, the following webpages: "Data Policy,"

3

11. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as "posts" on the user's profile page, where they can be viewed either by the general public or only the user's followers, depending on privacy settings. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.

12. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

13. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view

---

https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

4

their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

14. Non-content dialing, routing, addressing, and signaling information is generated as accounts access Instagram and use its features. This information might include the source and destination of Instagram-based communications (*e.g.*, the users who sent and received a message), the date and time of the communications, and the type of communications (*e.g.*, Instagram Direct message, video chat, or post). It is possible to collect this information with a pen/trap device.

15. Devices directly connected to the Internet are identified by a unique number called an Internet Protocol ("IP") address. This number is used to route information between devices. Generally, when one Internet-connected device (such as a laptop or smartphone) requests information from a second device (such as Meta servers hosting data relating to the subscriber's account), the requesting device specifies its own IP address so that the responding device knows where to send its response. In other words, when a user logs into their Instagram account or takes an action while logged in, the user's device transmits the IP address assigned to it to Meta servers as part of its communication. This IP address is analogous to a telephone number and can be recorded by a pen/trap device, and it indicates the online identity of the communicating device without revealing the communication's content.

16. On the Internet, data transferred between devices is not sent as a continuous stream, but rather it is split into discrete packets. Generally, a single communication is sent as a series of packets. When the packets reach their destination, the receiving device reassembles them into the complete communication. Each packet has two parts: a header, which contains routing and control information, and a payload, which generally contains user data. The header contains non-content information such as the packet's source and destination IP addresses and the packet's size. Source and destination port numbers are also included in specific fields within the headers of data packets and are used to route data packets either to a specific device or a specific process running on a device. When combined with the source and destination IP addresses, this routing information identifies the source device transmitting an IP packet and the destination device receiving the IP packet, and it is possible to record it via a pen/trap device without capturing the communication's content.

17. The FBI's investigation relates to the user of the Instagram account associated with username ziarmalsharify and account ID 45800988141. The FBI believes that the user of this account (hereinafter, the "Subject") is now based in the United States and was involved in attacks against U.S. and/or Afghan security forces prior to the U.S. withdrawal from Afghanistan. Investigation has also revealed the Subject may have been involved in the transportation of improvised explosive devices (IEDs) in Afghanistan.

18. The FBI obtained information from Meta Platforms, Inc. in response to an Order previously issued by this Court under 18 U.S.C. § 2703(d). That information established that the Instagram account associated with account ID number 45800988141

was associated with the vanity name "ziarmalsharify". Additionally, the FBI viewed publicly available information on the Instagram page for "ziarmalsharify" on or about July 22, 2022, which showed photographs of the Subject.

19. Information provided to the FBI by another United States government agency showed that multiple electronic devices recovered during counterterrorism operations in Afghanistan contained information about and communications with an older Facebook account (Account ID 100011363113713) believed to have once been used by the Subject. The FBI further notes that information about and communications with other social media accounts and a telephone number believed to have been used by the Subject were also found in some of these devices. While these devices did not contain information pertaining to the Instagram account associated with the vanity name "ziarmalsharify" and the account ID number 45800988141, the FBI's investigation has shown this account is used to communicate with individuals both in the U.S. and overseas.

20. Based on this information, investigators believe the Subject's social media communications may identify others involved or knowledgeable of the Subject's acts of terrorism outside of the U.S. as well as any intentions the Subject may have to conduct terrorism activity inside the United States. Investigators believe that communications relating to the offenses under investigation could have been and/or are being made over the Meta Platforms account listed in Attachment A.

21. The conduct being investigated involves use of the Instagram account described in Attachment A. To further the investigation, investigators seek to obtain the

dialing, routing, addressing, and signaling information associated with communications sent to or from the account.

## GOVERNMENT REQUESTS

22.     For the reasons stated above, the United States requests that the Court enter an Order authorizing the installation and use of a pen/trap device to record, decode, and/or capture the dialing, routing, addressing, and signaling information associated with each communication (including account logins, photo and video uploads, comments, and communications sent or received via Instagram Direct) to or from the Meta Platforms account described in Attachment A, including, without geographic limit: the date and time of the communication; source and destination information (including account and device identifiers and login and transactional IP addresses with associated port numbers); and any other header or routing information.  The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

23.     The United States further requests that the Court authorize the foregoing installation and use for a period of sixty days from the date of the Court's Order, pursuant to 18 U.S.C. § 3123(c)(1).

24.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order Meta Platforms and any other person or entity providing electronic communication service in the United States whose assistance may facilitate execution of this Order to furnish, upon service of the Order, information, facilities, and technical assistance necessary to install the pen/trap device, including installation and operation of the pen/trap device unobtrusively and with minimum disruption of normal

service. Any entity providing such assistance shall be reasonably compensated by the FBI pursuant to 18 U.S.C. § 3124(c) for reasonable expenses incurred in providing facilities and assistance in furtherance of this Order.

25. The United States further requests that the Court order Meta Platforms and any other person or entity whose assistance may facilitate execution of this Order to provide such necessary information, facilities, and technical assistance so that the FBI begins to receive the information described above no later than 10 days after service of the Order upon Meta Platforms.

26. The United States further requests that the Court order Meta Platforms and any other person or entity whose assistance may facilitate execution of this Order to provide prior notice to the applicant and the FBI before terminating or changing service to the account(s) described in Attachment A.

27. The United States further requests that the Court order that the FBI and the applicant have access to the information collected by the pen/trap device as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the Order.

28. The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order Meta Platforms and any other person or entity whose assistance facilitates execution of this Order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of this application and Order, the resulting pen/trap device, or this investigation, unless and until authorized by this Court, except that Meta Platforms may disclose this Order to an attorney for Meta

Platforms for the purpose of receiving legal advice.

29.   The United States further requests that this application and any resulting Order be sealed until otherwise ordered by the Court, pursuant to 18 U.S.C. § 3123(d)(1).

30.   The foregoing is based on information provided to me in my official capacity by agents of the FBI.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  March 24, 2023  .

_____
Andrew T. Boone
Assistant United States Attorney
260 W. Vine Street, Suite 300
Lexington, Kentucky 40507-1612
andrew.boone2@usdoj.gov